ORAL ARGUMENT SCHEDULED FOR DECEMBER 7, 2022
No. 22-5069
(Consolidated with 22-7030, 22-7031)

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――――――

JAMES BLASSINGAME AND SIDNEY HEMBY,

*Appellees*,

v.

DONALD J. TRUMP,

*Appellant.*

―――――――――――――

On Appeal from the United States District Court
for the District of Columbia

―――――――――――――

**REPLY BRIEF FOR APPELLANT
DONALD J. TRUMP**

―――――――――――――

David A. Warrington          Jesse R. Binnall
Jonathan M. Shaw               *Counsel of Record*
Gary M. Lawkowski            Molly McCann
DHILLON LAW GROUP, INC.      BINNALL LAW GROUP, PLLC
2121 Eisenhower Avenue, Suite 402   717 King Street, Suite 200
Alexandria, Virginia 22314   Alexandria, Virginia 22314
Tel:  (703) 574-1206         Tel: (703) 888-1943
Fax:  (415) 520-6593         Fax: (703) 888-1930
dwarrington@dhillonlaw.com   jesse@binnall.com
jshaw@dhllonlaw.com          molly@binnall.com
glawkowski@dhillonlaw.com

**COUNSEL FOR PRESIDENT DONALD J. TRUMP**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

SUMMARY OF THE ARGUMENT ........................................... 1

ARGUMENT ................................................................................ 2

    I.    Appellees cannot show that President Trump's speech on a matter of public concern is beyond the outer perimeter of his presidential immunity.................................. 3

        a.    The Appellees' reliance on *Clinton* is an attempt at a legal sleight of hand ..................................................... 6

        b.    The Appellees continue to argue the same functional immunity espoused by the dissent in *Fitzgerald* .................................................................. 10

    II.    President Trump's formulation would not create boundless immunity............................................................. 15

CONCLUSION ........................................................................... 18

CERTIFICATE OF COMPLIANCE.......................................... 20

CERTIFICATE OF FILING AND SERVICE ......................... 21

# TABLE OF AUTHORITIES

## CASES

*Clinton v. Jones*,
    520 U.S. 681 (1997) ...................................3, 6, 7, 8, 9, 13, 14, 15, 16

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ........................................ 1, 2, 3, 4, 5, 6, 7, 8, 9,
    10, 11, 12, 13, 14, 15, 16, 17

*Pierson v. Ray*,
    386 U.S. 547 (1967) ........................................................................ 1

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) .................................................................... 3

*Trump v. Mazars USA, LLP*,
    140 S. Ct. 2019 (2020) ................................................................. 8, 9

*Whitman v. American Trucking Association*,
    531 U.S. 457 (2001) ........................................................................ 7

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. I .......................................................................... 2, 3

## OTHER AUTHORITY

Katherine Shaw, *Beyond the Bully Pulpit:*
*Presidential Speech in the Courts*, 96 Tex. L. Rev. 71 (2017).................. 3

*Authorities upon which we chiefly rely are marked with asterisks.

## SUMMARY OF THE ARGUMENT

Speechmaking is a fundamental part of the presidency. Since the early days of the republic, presidents have addressed Americans to seek support for their policies and political agenda. There is, perhaps, no better example of an activity that is so integrally woven into the Office of the President and thus fully protected by presidential immunity. These speeches are often controversial, and "arouse the most intense feelings." *Nixon v. Fitzgerald*, 457 U.S. 731, 752 (1982) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

The arguments advanced by Plaintiffs-Appellees ("Appellees") would seriously undermine these protections. Indeed, the politically subjective test for which they advocate and which the district court adopted, would open the floodgates of litigation against future presidents by adopting a content-based analysis of presidential motive and which will result in the precise drawing of functional lines "finer than history and reason would support." *Fitzgerald*, 457 U.S. at 755. Instead of demonstrating how a presidential speech is beyond the outer perimeter of that president's duties, Appellees echo the reasoning of the district court and essentially advocate that this Court adopt the standard

1

advanced by the *Fitzgerald* dissent, a standard resolutely rejected by the Supreme Court forty years ago. *Id.* at 756. The underlying question here is simple: is a president immune from civil liability when he or she gives a speech on a matter of public concern? The answer is undoubtedly, yes. Even the district court answered it affirmatively, as it had to, JA-233-34, but then veered off into an inappropriately detailed functional analysis foreclosed by *Fitzgerald*. This Court should reverse the district court and remand with instructions to dismiss President Trump as a defendant.

## ARGUMENT

On appeal, Appellees urge this Court to apply the subjective functional immunity rejected by the *Fitzgerald* Court.[1] They twist the

---

[1] The Appellees created an argument never advanced by President Trump when they asserted that by arguing that the speech at issue was on a matter of public concern, he attempted "to import a sweeping First Amendment standard into the presidential immunity inquiry." Appellees' Br. at 38-39. This red-herring is an attempt to muddy clear legal waters. The First Amendment issues in this case are not before the Court on this limited appeal. That a central official function of a president is to communicate with the American people on matters of policy, politics, and public concern is self-evident, widely agreed upon, and a separate argument from any First Amendment analysis.

holdings of that seminal case and manufacture a multi-factor test to replace the straight-forward dictates of the Supreme Court.

Principally, they argue that President Trump's speech is not immune because his "First Amendment test is untethered from the constitutional inquiry that *Clinton* and [*Fitzgerald*] require," and that it would create boundless presidential immunity. Br. of Appellees' ("Appellees' Br."), Doc. No. 1967119, at 38. They are wrong on both points.

## I.    Appellees cannot show that President Trump's speech on a matter of public concern is beyond the outer perimeter of his presidential immunity.

The district court agreed with this basic premise: "[S]peech is unquestionably a critical function of the presidency. 'The President of the United States possesses an extraordinary power to speak to his fellow citizens and on their behalf.'" JA-233 (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2417–18 (2018)). In fact, "[r]hetoric is a central feature of the presidency . . . [E]very presidency begins with an inaugural address. The first time Americans encounter their President *as* President is in the context of speechmaking." Katherine Shaw, *Beyond the Bully Pulpit: Presidential Speech in the Courts*, 96 Tex. L. Rev. 71, 79 (2017). The Appellees cannot overcome this basic feature of the presidency.

Even the district court acknowledged that President Trump's speech "touch[ed] on matters of public concern." JA-235. What the district court and Appellees ignore, however, is that a president commenting on congressional action, whatever that action may be and regardless of whether it would directly involve the executive's assent or veto, is necessarily a matter of public concern.

Trying to identify speech that would benefit a president politically would run afoul of the dictates of the *Fitzgerald* Court by too closely and intrusively inquiring into the acts and motives of the executive branch.[2] *Fitzgerald*, 457 U.S. at 756. As Chief Justice Burger correctly noted, the "Judiciary always must be hesitant to probe into the elements of Presidential decision-making, just as other branches should be hesitant to probe into judicial decision-making." *Id.* at 761 (Berger, C.J., concurring).

The Appellees cannot overcome President Trump's ironclad presidential immunity as it relates to speechmaking. Instead, they invite the Court to sympathetically consider difficult facts and make bad law.

---

[2] Politics is inseparable from the presidency. Even the district court recognized that all first-term presidents are, "in a sense, always a candidate for office." JA-235.

4

In doing so, Appellees cobbled together out-of-context statements from various parts of the *Fitzgerald* majority and misleadingly declared them a test set down by that Court. Their brief states, "[*Fitzgerald*] directs the court to ask whether Trump's conduct, including the elements that involved speaking, related to any 'constitutional [or] statutory authority' of the president, was a 'functionally mandated incident of the President's unique office,' or preserved the separation of powers in which the immunity is 'rooted.'" Appellees' Br. at 39–40 (internal citations omitted).

This multi-factor test is a fabrication, as a review of their various citations makes clear. The Supreme Court considered those and other factors before coming to *its* decision on immunity, but it did not direct lower courts to undertake such an analysis. Instead, the Court sought to protect the executive from unwarranted intrusion by drawing bright lines to guide the lower courts. In that light, the Court specifically recognized that "[i]n many cases it would be difficult to determine which of the President's innumerable "functions" encompassed a particular action." *Fitzgerald*, 457 U.S. at 756.

This test is nothing more than an effort to tempt this Court to reconsider and overturn precedent decided long ago by the Supreme

Court in *Fitzgerald*. To legitimize this daring strategy, they twist the law in *Clinton v. Jones*, 520 U.S. 681 (1997), to support an incorrect interpretation of presidential immunity that is nothing more than the position of the *Fitzgerald* dissenters in disguise, a position firmly rejected by the majority. *Fitzgerald*, 457 U.S. at 756 ("An inquiry into the President's motives could not be avoided under the kind of 'functional' theory asserted both by respondent and the dissent. Inquiries of this kind could be highly intrusive.").

### a. The Appellees' reliance on *Clinton* is an attempt at a legal sleight of hand.

The Appellees rely heavily on *Clinton v. Jones*—as they did in the district court. In arguing their case, however, they completely whitewash significant factual differences. They complain that because most presidential speech is on matters of public concern, a finding here for President Trump would run afoul of the *Clinton* holding that immunity is "grounded in the nature of the function performed, not the identity of the actor who performed it." Appellees' Br. at 2 (quoting *Clinton*, 520 U.S. 695). Hogwash. While a president's immunity on speechmaking is at least as broad as his immunity on executive branch personnel matters,

6

that does not personalize the immunity to an individual rather than the office, it simply recognizes the function of speechmaking as an integral part of the presidency. The distinction from the *Clinton* case could not be more stark.

In *Clinton*, the Court analyzed an alleged action taken by President Clinton before his election, rather than an act taken during his term of office. Moreover, the action in *Clinton* involved sexual harassment and assault, acts that served only the prurient interest of the individual and not any official function of the presidency. Presidents are expected to give speeches, they are not expected to harass government employees in private hotel rooms. *See Clinton*, 520 U.S. at 685. The Court's analysis, therefore, was simplified by those two critical and significant distinctions. Appellees cherry-pick language that suggests support for subjective functional immunity. But the Supreme Court did not hide an elephant in a mousehole[3] and *Clinton* did not overrule *Fitzgerald*.

While *Clinton* might be appropriate to invoke for supporting points of law, its radically different fact pattern makes it inappropriate as the

---

[3] *See Whitman v. American Trucking Association*, 531 U.S. 457, 468 (2001).

chief authority in this appeal. The Appellees' reliance on it only underscores that they are shying away from the Supreme Court's bright line ruling in *Fitzgerald*, which is the on-point and controlling authority here.

The district court, too, relied on *Clinton* to apply a subjective functional immunity rejected by *Fitzgerald*. After admitting speech is a critical function of the presidency, the district court held that even though "speaking on matters of public concern is a function of the presidency" that "does not answer the question at hand: Were President Trump's words in this case uttered in performance of official acts, or were his words expressed in some other, unofficial capacity?" JA-233–34. Citing *Clinton,* the district court concluded that "[t]he President's proposed test—that whenever and wherever a President speaks on a matter of public concern he is immune from civil suit—goes too far." JA-234.

In doing so, the district court disregards the Supreme Court's recent guidance in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020). In *Mazars*, the Court noted "the President is the only person who alone composes a branch of government. As a result, there is not always a clear

line between his personal and official affairs. 'The interest of the man' is often 'connected with the constitutional rights of the place.' The Federalist No. 51, at 349." *Id.* at 2034.

This is the district Court's central error. Both the district court and the Appellees selectively use *Clinton* to support their argument that the courts can analyze a speech by a sitting president to determine whether part or all of it was "unofficial" in nature. But such parsing was not required in *Clinton*, is inconsistent with *Mazars*, and is impermissible under *Fitzgerald.* The *Clinton* Court specifically held that "[w]hatever the outcome of [the *Jones* case], there is no possibility that the decision will curtail the scope of the official powers of the Executive Branch." *Clinton*, 520 U.S. at 701. That is inapposite to this case where the Appellees seek to have the Court become the arbiter of presidential speechmaking.

Appellees seek damages for harm they claim arose from such a speech. Unlike *Clinton,* the act in question, President Trump's speech, occurred during his term of office and involved an activity normal and customary to the presidency. Consequently, the analysis in *Fitzgerald* controls, as does that Court's dictate that once it is determined the

activity under review is one that a sitting president undertakes in his presidential capacity, no further analysis is permitted. *Fitzgerald*, 457 U.S. at 757 (rejecting any analysis beyond whether a function is within the outer perimeter of presidential duties).

### b.  The Appellees continue to argue the same functional immunity espoused by the dissent in *Fitzgerald*.

*Fitzgerald* held that "the sphere of protected action must be related closely to the immunity's justifying purposes . . . [b]ut the Court also has refused to draw functional lines finer than history and reason would support." *Fitzgerald*, 457 U.S. at 755. This is the critical inflection point in the *Fitzgerald* opinion. It is the point of departure from the strict functional immunity urged by the dissent and espoused by the Appellees here.

The *Fitzgerald* Court understood that the president occupies a unique position, *Fitzgerald*, at 749; that he has vast and often difficult-to-define duties, *id.* at 756; and that the prominence and visibility of his office make him a target. *Id.* at 752–53. In our litigious and partisan system, these vulnerabilities pose a serious threat to the smooth

10

functioning of government and to the execution of the will of the people through their chosen executive.

It is critical, therefore, that any analysis of presidential immunity be content-neutral, looking only to the function being performed and not the politics or policy being advanced or the words being used. Such a disciplined approach will avoid courts becoming subjective political arbiters of executive actions, necessarily degrading the separation of powers.

The Appellees, however, advance the position of the *Fitzgerald* dissent. They mock President Trump's formulation of presidential immunity as encompassing those activities that "Presidents ordinarily do." Appellees' Br. at 39. They describe this as "so vague as to be meaningless." *Id.* That they would find ready agreement from the justices who dissented in *Fitzgerald* does not matter; those justices did not carry the day, as they themselves acknowledged at the time.

The *Fitzgerald* majority described the scope of the immunity as determined by the majority to simply be "[a] President, acting within the outer boundaries of what Presidents normally do." *Id.* at 764 (White, J., dissenting). The Appellees and the district court clearly agree with the

11

dissent's scathing analysis of the majority, and they are certainly welcome to that opinion. But the majority did not find its own determination "so vague as to be meaningless," and it remains the law.

Appellees engage in expedient and deliberate blindness. They objected to President Trump's argument that speeches are something president's ordinarily do because, they noted, "[a]ll kinds of things presidents 'ordinarily do,' like making a snack or helping their kids with college applications, obviously fall outside the outer perimeter of the president's official responsibilities." Appellees' Br. at 40. But those examples are clearly different in kind from the activity at issue in this case. Sexual assault and making a snack are both activities of a manifestly private nature, while a speech is an activity that presidents ordinarily do *as president*. Appellees refusal to recognize this relatively obvious point has hopelessly warped their analysis.

Again, the *Fitzgerald* dissent illuminates how wide of the mark the Appellees are in their position. The dissent underscored that the majority was indeed departing from subjective functional immunity. It complained that "the majority turns [subjective functional immunity] on its head by declaring that because the functions of the President's office are so varied

12

and diverse and some of them so profoundly important, the office is unique and must be clothed with officewide, absolute immunity." *Fitzgerald*, 457 U.S. at 770 (White, J., dissenting).

While the dissent was wrong that the Court's opinion would personalize immunity to the officeholder—a notion dispelled by the Court's ability in *Clinton* to identify private acts from public ones and to separate the person from the office—the dissent was right that the majority mandated a broad and sweeping immunity for the president undertaking acts that presidents ordinarily do as an incident of their office. The Appellees and the district court miss this nuance entirely as they resurrect the position of dissent.

The dissent pointed to the functional immunity for federal officials "including absolute immunity for judges, prosecutors, and those officials doing similar work" to conclude that the majority "casually, but candidly, abandon[ed] the functional approach to immunity that has run through all of our decisions." *Id.* at 769–70 (White, J., dissenting). This is the exact functional immunity advocated by Appellees, and the position of the district court. Both seek to parse the activity of the president at a more granular level than the majority in *Fitzgerald* permitted.

13

Justice White and his dissenting colleagues described the presidential immunity adopted by the majority as "[a]ttaching absolute immunity to the Office of the President rather than to particular activities that the President might perform." *Id.* at 766 (White, J., dissenting). The Appellees join the dissent to decry this allegedly identity-based immunity, too. But common sense alone should make clear that there are all sorts of activities that are not beyond the scope of a president's official immunity—things like sexual assault and snacking. The Appellees own preferred authority—*Clinton v. Jones*—makes clear that post-*Fitzgerald* courts can, in fact, tell the difference between official and unofficial conduct. The *Clinton* Court had no trouble denying immunity.

In fact, the *Clinton* Court very clearly does not support the subjective functional analysis proposed by the Appellees. In denying immunity to President Clinton, the majority held that his immunity was not boundless because the President is "subject to the laws for his *purely* private acts." *Clinton*, 520 U.S. at 696 (emphasis added). The district court admitted that President Trump's speech was not a *purely* private act when it concluded that part of President Trump's speech was in the

public interest and in his capacity as President. JA-240 ("For present purposes it suffices to say that while the Speech did touch on matters of public concern, (namely President Trump's pledge to work on election laws in a second term), the main thrust of the Speech was not focused on policy or legislation.").

The majority in *Fitzgerald* identified sweeping "absolute Presidential immunity from damages liability for acts within the 'outer perimeter' of his official responsibility," and held that the "mandate of office must include the authority to prescribe reorganization and reductions in force." *Fitzgerald*, 457 U.S. 756–57. Speech has been acknowledged as a central element of the presidency, and the "mandate of office must include" the ability to speak to the people. No further inquiry into President Trump's motives is permitted. To hold otherwise would, indeed, upend settled constitutional law on presidential immunity.

## II.  President Trump's formulation would not create boundless immunity.

In perhaps their most egregious misuse of *Clinton v. Jones*, the Appellees quote extensively from statements in that case in which the

15

Court was holding that President Clinton could not be immunized from suit for unofficial acts (sexual assault) undertaken before he became president simply because he was president at the time of the suit. President Trump does not challenge *Clinton's* holding that the Office of President does not cloak the officeholder in absolute immunity against all suits simply because he or she holds the office. He does object to this gross misapplication of law to the case at bar.

That President Trump was the incumbent President when the speech was given coupled with the official nature of the act cloaks him with absolute immunity according to *Fitzgerald*. That is the focus of the *Fitzgerald* dissent's lament. And, as discussed above, although this immunity is sweeping, it is not boundless. The *Fitzgerald* majority sketched out the limits in that opinion, and court cases since—most prominently *Clinton v. Jones*—make clear judges can navigate the boundaries between public and private activity.

The immunity agreed upon by the majority in *Fitzgerald* made the dissent uncomfortable; it makes the district court in this case and the Appellees uncomfortable, too. But there was real wisdom in the *Fitzgerald* majority. The test developed by the district court and

advocated by the Appellees would indeed open the floodgates of litigation against every president.

The question in this case is not whether coordinate branches can check the executive, it is only asking what vehicles are available for doing so. Civil liability in the judicial department is an inappropriate and constitutionally unavailable avenue to hold a president accountable for a speech made during his term of office. The founders did provide a specific vehicle for accountability, however: impeachment.[4] Appellees are doubtlessly disappointed by the Senate's verdict in last year's impeachment trial. But their disappointment does not give them license to invade the constitutionally sound protections of presidential immunity.

---

[4] Likewise, *Fitzgerald* was fulsome in its discussion of alternative means to check the executive. The Appellees ignore these, including when they argue that President Trump's speech and the ensuing mob activity infringed on Congress's constitutional immunity, thereby cancelling his own. Appellees' Br. at 29–31. Here again, the remedy is not to put Article III in the midst of the dispute. Rather, Congress has its impeachment power.

## CONCLUSION

President Trump's speech was well within the outer perimeter of his robust presidential immunity. He respectfully requests this Court reverse the district court and remand with instructions to dismiss President Trump as a defendant.

Dated: October 31, 2022                    Respectfully submitted,

                                           */s/*Jesse R. Binnall
                                           Jesse R. Binnall
                                           Molly McCann
                                           BINNALL LAW GROUP, PLLC
                                           717 King Street, Suite 200
                                           Alexandria, Virginia 22314
                                           Phone: (703) 888-1943
                                           Fax: (703) 888-1930
                                           jesse@binnall.com
                                           molly@binnall.com
                                           *Attorneys for Donald J. Trump*

                                           David A. Warrington
                                           Jonathan M. Shaw
                                           Gary M. Lawkowski
                                           DHILLON LAW GROUP, INC.
                                           2121 Eisenhower Avenue, Suite 402
                                           Alexandria, Virginia 22314
                                           Tel: (703) 574-1206
                                           Fax: (415) 520-6593
                                           dwarrington@dhillonlaw.com
                                           jshaw@dhllonlaw.com
                                           glawkowski@dhillonlaw.com

19

# CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Reply Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the parts of the Reply Brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), it contains 3,339 words.

Undersigned counsel certifies that this Reply Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

Dated: October 31, 2022                    Respectfully submitted,

*/s/* Jesse R. Binnall
Jesse R. Binnall
*Attorney for Donald J. Trump*

20

## CERTIFICATE OF FILING AND SERVICE

I certify that on October 31, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall
*Attorney for Donald J. Trump*
